Chance, 16 Beav. 572; Coggin's Ap., 124 Pa. 10: Palmer v. Holford, 4 Russ. 403; Curtis v. Lukins, 5 Beav. 147; Merlin v. Blagrave, 25 Beav. 125; Boughton v. James, 1 Coll. C. C. 26; Hale v. Hale, L. R. 3 Ch. Div. 643; Grimshaw's Est., L. R. 11 Ch. Div. 406; Mifflins Ap., 121 Pa. 205; Grig v. Hopkins, Sid. 37; Griffith v. Blunt, 4 Beav. 252; Hillyard v. Miller, 10 Pa. 326; Penn Co. v. Price, 7 Phila. 465

*Henry J. Hancock*, and *Charles H. Sayre*, with them *J. Willis Marten* and *J. Sargeant Price*, for appellees, cited: Little v. Wilcox, 119 Pa. 439; Lightner's Ap., 11 W. N. C. 181; Husbands on Married Women, 283; Barnett's Ap., 46 Pa. 392; Rife v. Geyer, 59 Pa. 393; Ogden's Ap., 70 Pa. 501; Bentley v. Kauffman, 86 Pa. 99; Bacon's Ap., 57 Pa. 504; Earp's Ap., 75 Pa. 119; Marsden on Perpetuities, 31; Gray on Perpetuities 205; Lett v. Randall, 10 Sim. 112; Womrath v. McCormick, 51 Pa. 504; Manderson v. Lukens, 23 Pa. 31; Muhlenburg's Ap., 103 Pa. 587; Theobold on Wills, 407, 412, 153, 388, 635; Sears v. Putnam, 102 Mass. 5.

PER CURIAM, January 25, 1892.

We affirm this decree upon the opinion of the learned judge of the orphans' court, and dismiss the appeal at the costs of the appellant.

Provident Life and Trust Co., Executor, v. Fiss, Appellant.

*Ground rents—Covenents running with land.*

Where the owners of a large lot of ground encumbered by a ground rent, convey a portion of the lot reserving to themselves a ground rent, and covenanting to save harmless the grantee against the paramount ground rent, and giving him a right of distress upon the remaining portion of the lot if he suffers loss, the covenant so created does not attach to the second ground rent but to the land unsold, and when this land passes to other parties, it passes encumbered by the covenant pledging it as security to the grantees of the small lot against the paramount ground rent.

*Set-off—Breach of covenant.*

In an action on a ground-rent deed the terre tenant cannot set off damages arising from a breach of covenant occurring while the title was in his predecessors.

Argued Jan. 5, 1892.    Appeal, No. 272, Jan. T., 1891, by defendant, from order of C. P. No. 4, Phila. Co., Sept. T., 1890, No. 148, entering judgment for want of a sufficient affidavit of defence.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit by the Provident Life and Trust Co., executor and trustee of James T. Lukens, deceased, against Peter Fiss, covenantor, and Gustavus C. Seidel, terre tenant, on a ground-rent deed.

The facts appear in the following opinion, by THAYER P. J.

" This action is brought for the recovery of arrears of ground rent accruing out of a lot of ground on the north side of Callowhill street, 124 feet west of Kunckel street, 18 feet front by 72 feet deep, which ground rent belongs to the estate of James T. Lukens, deceased.   The lot of ground out of which it issues belongs now to Gustavus C. Seidel, who, as terre tenant, has appeared and filed an affidavit of defence against the plaintiff's claim.

" The facts of the case, as they are set forth in the statement and affidavit of defence filed, are briefly these:

" By deed dated June 29, 1785, John Penn and John Penn, Jr., conveyed to John Kunckel, Jr., in fee, a large lot of ground on the northeast corner of Fourth and Callowhill streets, containing 90 feet on Callowhill street and 72 feet on Fourth street, reserving thereout an annual ground rent of $88.   By deed dated August 1, 1786, Kunckel, the grantee of the Penns, conveyed this lot to Christian Knies and Jacob Ettwein. Knies and Ettwein being thus the owners of this large lot, subject to the ground rent of $88 per annum, by a deed dated August 23, 1786, conveyed a portion of it, 18 feet front on Callowhill street by 72 feet deep, to Peter Fiss, reserving thereout an annual ground rent of $18 per annum.

" In this deed Knies and Ettwein " for themselves, their respective heirs, executors and administrators," covenanted with the grantee that they would forever indemnify and save harmless the grantee and lot of ground granted to him, against the paramount ground rent of $88 per annum already mentioned, and against all suits, distresses, entries and claims therefor; and they further convenanted that if at any time any entry or

distress should be made or taken upon the 18 feet lot, for the said paramount rent, that then it should be lawful for the grantee, his heirs and assigns, to enter upon and distrain upon the remaining westernmost part of the said whole lot belonging to Knies and Ettwein, and to sell and dispose of such distress, or sue for and recover his loss or damage by action of debt or covenant.

" Subsequently Knies and Ettwein sold and conveyed the westernmost part of the large lot which they had thus, so far as they were able to do so, charged with the payment of the entire ground rent of $88, and by various mesne conveyances the title has become vested in other people.   The ground rent of $18, which they reserved by the deed of August 23, 1786, out of the smaller lot, part of the larger lot, has, by sundry mesne conveyances, become vested in the present plaintiffs, and, it being in arrears, they have brought the present suit to recover the arrearages.

" Seidel, who is now the owner of the small lot, out of which the $18 ground rent was reserved, sets up in his affidavit the defence, that during the years for which the ground rent is claimed by the plaintiffs, the owners of the paramount ground rent distrained upon the smaller lot, and that the owners thereof, who were Seidel's predecessors in the title, were obliged to pay, and did pay, to the owners of the paramount rent the sum of $18 during each of said years, and that therefore, the plaintiffs, having failed to keep the covenant made by Knies and Ettwein, are therefore estopped from recovering the arrears of said ground rent from the defendant Seidel.

" The defendant further alleges that, in consequence of a threat of distress, he paid to the owners of the paramount ground rent on July 3, 1890, the sum of $18, and that he is thereby exonerated from paying the ground rent for 1890 to the plaintiff.

" This defence assumes that the owners of the $18 ground rent, to whom the ground rent has come by various assignments, are bound by the covenant, above recited, made by Knies and Ettwein, to indemnify the owners of the small lot against the paramount rent.

" But this position is altogether incapable of being maintained, as was expressly ruled by this court in the case of Lukens v.

Fiss, 15 Phila. Rep. 333, a judgment which underwent the scrutiny of the Supreme Court, and, on review there, was affirmed at July Term 1882, No. 227. It was there pointed out that the assignees of the $18 ground rent were not bound by the covenant referred to. By the express words of the covenant the larger lot, retained by Knies and Ettwein when they sold the small lot, stands as the indemnity to the defendant; and the owners of the $18 ground rent were in no way concerned with that covenant. In other words, if the burden of the covenant made by Knies and Ettwein bound anybody but Knies and Ettwein, " and their respective heirs, executors, and administrators," it bound not the assignees of the $18 ground *rent,* but the alienees of the larger lot of ground which Knies and Ettwein, while they were still owners of it, expressly charged with the payment of the entire paramount rent when they created the $18 ground rent. The benefit of the covenant ran with the small lot which they conveyed, the burden of it with the larger lot which they retained, and which they made the security which was to indemnify the grantee of the small lot, and his assigns, against the paramount ground rent. Knies and Ettwein did not pretend to charge the ground *rent,* which they created, with any covenant or responsibility for the payment of the Penn ground rent of $88 to which the whole lot was subject when they bought it from Kunckel in 1786. When they sold the small lot on ground rent to Peter Fiss they did undertake to indemnify him and his assigns against the paramount ground rent, and they in effect covenanted that that portion of the large lot which they retained should pay the whole of the Penn ground rent, and should stand as a security for its payment. The $18 ground rent which they reserved passed to the subsequent assignees of it unencumbered without any obligation whatever on the part of its owners. The covenant which Knies and Ettwein made did not attach to the ground rent which they created, *but to the residue of the lot which they retained,* and when that lot passed into other hands it passed encumbered by the covenant which they had made and put on record, pledging it as security to the grantees of the small lot against the paramount ground rent. Who would buy a ground rent of $18 which was subject to a liability for a paramount ground rent of $88, and of what value

would it be ?   Knies and Ettwein did not attempt any such absurdity.   They owned a large lot of ground containing 90 feet on Callowhill street, which was subject to the Penn ground rent of $88 per annum.   They sold to Fiss the small lot of 18 feet at $1 a foot on ground rent, but knowing very well that no one would buy it at that price unless he was indemnified against the paramount rent, they made with the purchaser the covenant in question, by which they agreed that the residue of the lot which they retained should stand as a security and indemnity to the vendee of the small lot against the paramount ground rent.   The practical result is that if the present owner of the small lot is obliged to pay any portion of the paramount rent, he can indemnify himself by proceeding against the owner of the large lot under the covenant already referred to.   The present owner of that lot holds it subject to the covenant made by Knies and Ettwein under whom they claim, our opinion being that the burden of that covenant runs with the land upon which it was expressly charged by Knies and Ettwein, there being a direct privity of estate between them and him, and the owner of the 18 feet lot being clearly entitled to the benefit of that covenant.   It would seem to be abundantly established that whenever a covenant relates to land, and charges it with a burden, its obligation will bind every subsequent assignee of the land.   This is subject only to the qualification that the burden of covenants does not attach to land in the absence of privity of estate.   The material points in every such inquiry are whether the parties meant to charge the land, and whether the burden is one that can be imposed consistently with policy and principle.   See the cases collected in the notes to Spencer's Case, 1 Sm. Lead. Cases, 217.   And see Carr v. Lowry, 27 Pa. 257 ; Bland v. Umstead, 23 Pa. 316 ; Quain's Appeal, 22 Pa. 510 ; Coleman v. Coleman, 19 Pa. 100 ; Norman v. Wells, 17 Wend., 136 ; Beach v. Baron, 13 Barb. 305 ; Dunbar v. Jumper, 2 Yeates, 74.   The cases in Pennsylvania show that every right which can arise or be created out of land by a grant or reservation may be made the subject of an appropriate covenant which will bind the land as well as the parties, and may be enforced by and against subsequent assignees and purchasers.   See 1 Sm. L. Cas. 190.   The doctrine relating to covenants running with land has been carried in Pennsylvania

as far as in any other state, perhaps further than in some, a fact which may be due, as is suggested by the learned author of the notes to Spencer's Case, to the fact that if an assignee, who has no other remedy, can, as it would seem he may, file a bill in equity, there is no reason why he should not bring covenant in Pennsylvania, where the courts administer equitable principles through legal forms : 1 Sm. L. Cas. 187. In the present case it would seem to be the plainest equity that the lot of ground which Knies and Ettwein, while they were still the owners of it, covenanted should be responsible for the whole paramount rent should stand so charged in the hands of their grantees, who took their title with record notice of the covenant. We are clearly of opinion that that covenant ran with the title of both lots from the day on which it was made, exempting the one and binding the other to the burden of the paramount rent.

"In the case of the Provident Life and Trust Co. v. Loftus, 24 W. N. C. 236, the same view of the effect of this covenant upon the rights of the respective parties was expressed by this court, and our judgment therein was again, after solemn argument in the Supreme Court, affirmed by that tribunal. In that case the owner of the $18 ground rent reserved out of the small lot, sued the owner of the large lot because he had neglected to pay the whole of the paramount ground rent, whereupon the owner of the paramount rent had collected a portion of it from the tenants of the small lot, whereby the owner of the small ground rent had been prevented from collecting his rent, but it was held by this court that there was no privity between the owner of the $18 ground rent and the assignee of the large lot of ground, that the former therefore had no right of action against the latter, that he had an adequate remedy for the recovery of his rent from the owner of the small lot, out of which it was reserved, and that the latter had his remedy over against the owner of the large lot in pursuance of the covenant, the burden of which ran with the land and fastened upon the large lot the liability for the entire paramount rent.

" This whole complication and litigation, as appears by the opinion delivered in Lukens v. Fiss, 15 Phila. R. 334, has arisen out of the fact that in a deed made for the large lot in 1886, nearly a hundred years after the deed of Knies and Ettwein to

Peter Fiss charging the whole of the paramount rent upon the residue of their land, the conveyancer or draughtsman who prepared it introduced a recital apportioning the paramount rent between the two lots. For this there was not the slightest warrant, and whether done through ignorance or for a dishonest purpose, it was totally without effect upon the rights of the owner of the small lot. As between the owner of the paramount ground rent and the terre tenants of both lots, the Penn ground rent was and is a charge upon both lots. As between the several owners of the two lots, the paramount rent is payable out of the large lot alone.

"It was suggested on the argument by the learned counsel for the defendants that the decision of this court in 1878, in the case of Strobel v. Lukens, was in conflict with the subsequent cases of Lukens v. Fiss, and the Provident Life and Trust Co. v. Loftus, already referred to. But this is a mistake. Strobel v. Lukens is not reported, but I have carefully examined the record of that case, which was briefly this: It was an action of replevin by Strobel v. Lukens, who had distrained for arrearages of the $18 ground rent. Lukens avowed the taking of the distress in pursuance of his right as ground landlord, to which avowry the plaintiff pleaded the covenant of Knies and Ettwein, above mentioned, which covenant, it was averred, Lukens had not kept, and that in consequence thereof, the owner of the paramount rent had distrained upon the plaintiff, who had hereby been compelled to pay it. This was clearly a bad plea, for the reason already stated in this opinion, viz.: that the covenant of Knies and Ettwein did not run with the ground rent reserved, but with the land upon which it was fastened by Knies and Ettwein, and Lukens was therefore a stranger to that covenant, and by no means bound by it or responsible for it, the pleader being plainly mistaken in supposing that the covenant ran with the ground rent instead of the land, and that it bound the owner of the ground rent instead of the owner of the land. Instead of demurring to this plea, which was plainly bad, Lukens replied to it that at the time of his taking the distress complained of there had been no distress made for the paramount ground rent. To this replication the plaintiff rejoined that, although it was true that at the time the defendant made the distress for his rent no distress had

been made for the paramount rent, yet that the paramount rent was in arrears at that time, and that the owners thereof had subsequently, and before the commencement of the replevin, distrained for it, and the plaintiff, in order to prevent the sale of his goods, paid it.   To this rejoinder the defendant demurred, and upon argument, the court overruled the demurrer. It must be manifest that, inasmuch as the defendant admitted the validity of the plaintiff's plea to the avowry, and sought to avoid it, as he did, by the new matter set up in his replication, and as the plaintiff's rejoinder to that replication, considered in itself and alone, was good, the demurrer to it was properly overruled.   It must be equally clear that if the defendant, instead of filing that unfortunate replication, had demurred to the plaintiff's plea to the avowry, or if, notwithstanding the replication to the plea and the rejoinder thereto, it had been pointed out to the court on the argument that the plea to the avowry was itself bad, and that so the first fault in the pleading had been committed by the plaintiff himself, the judgment, notwithstanding the subsequent pleadings, must necessarily have been for the defendant instead of the plaintiff in Strobel v. Lukens.   In consequence of neither having been done, the case, it is quite clear, was decided upon a totally immaterial issue of law raised by the pleadings. · The question which we decided in Lukins v. Fiss and the Provident Life and Trust Co. v. Loftus, both of which judgments were, as I have said, affirmed after argument, by the Supreme Court, was neither mooted nor passed upon in Strobel v. Lukens, which was anterior to the others in point of time.   There is therefore no conflict between the several decisions.

"From what has been said it is apparent that the affidavit of defence filed in the present case is bad.   The defence set up in it has been held to be bad four times—twice by this court and twice by the Supreme Court.   It is to be hoped, therefore, that this pertinacious ghost has now been effectually laid, or will be when its familiar shadow shall again darken the portals of the Supreme Court for the last time.   I may add, although it seems unnecessary, in view of our decision of the main question involved, that the other point made by the plaintiff on the argument, viz., that the defendant cannot in this suit set off damages arising from a breach of covenant occurring while the

title was in the defendants' predecessors, is well taken. Such damages do not belong to him, but to other people, and, therefore, cannot be set off by him. Covenants may run with land, but damages arising from broken covenants do not, nor do they inure to subsequent grantees of the title: See Demarest v. Willard, 8 Cowen, 206; Davis v. Lyman, 6 Conn. 249; Adams v. Conover, 87 N. Y. 422; Garrison v. Sandford, 7 Holst. 261; Ladd v. Noyes, 137 Mass. 151, and the cloud of cases upon the same point collected by Judge HARE in his elaborate and learned note to Spencer's Case, 1 Sm. L. C. 165. Rule absolute."

Defendant appealed.

*Error assigned* was the order entering judgment.

*D. H. Stone*, for appellant.

*Howard J. Lukens*, for appellee, was not heard.

PER CURIAM, January 25, 1892.

There is no wheat in this straw. It is all threshed out. This sufficiently appears by the opinion of the learned judge below. The judgment is affirmed for the reasons given by him.

## Fox, Appellant, *v.* Rentschler.

*Counsel fees—Affidavit of defence.*

In a suit for counsel fees plaintiff averred that he had been employed by defendants, two of the executors of a will, and had done a large amount of work for them, much of which was occasioned by their differences with the third executor; that before the account was filed, the defendants had dismissed him, whereupon at the audit he had presented claim for $1,000; that defendants made no objection to the amount claimed and did not deny that the services had been rendered, but that their counsel claimed that the estate should not be charged with the whole of it. The court then allowed plaintiffs $500 without prejudice to his rights against the executors personally for the balance. The defendants averred in their affidavit of defence that the plaintiff had rendered them no service; that he had him employed as counsel for the estate, and had been paid for his services on such employment, that the defendants had never promised to pay him anything, and that his services to the estate were worthless: *Held*, that there was no error in refusing judgment for want of a sufficient affidavit of defence.

Argued Jan. 6, 1892. Appeal, No. 285, Jan. T., 1881, by plaintiff, from order of C. P. No. 4, Philadelphia Co., June T.,